UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  | PRISONER |
| --- | --- | --- |
| LEROY R. WILLIAMS, JR. | : | NO. 3:01CV735(RNC)(DFM) |
|  | : |  |
| VS. | : |  |
|  | : |  |
| JOHN ARMSTRONG, ET AL. | : | DECEMBER 29, 2004 |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

I.      **BACKGROUND**

On May 19, 2000, the plaintiff LeRoy Williams was processed into the Corrigan

Correctional Institution.  During the admitting process, the plaintiff claims he was verbally

harassed, threatened, and assaulted by defendant Trainor.  He also alleges he was harassed by

other inmates after they were informed of his sexual assault charges.  The plaintiff claims he was

seen by Nurse Cathy Wilcox and then by Mental Health Worker Mary Cutler and placed in the

inpatient area.  Later he was attended to by Nurse Arsenault.  He claims he informed these

medical/mental health staff of his being assaulted.

The plaintiff was placed as an inpatient at Corrigan Correctional Institution on May 19,

2000, for mental health reasons relating to potential suicide.  He was then transferred to Garner

Correctional Institution for mental health issues.  While at Garner Correctional Institution, he

complained to staff of the alleged assault by defendant Trainor.  His Special Public Defender

wrote to then Commissioner Armstrong about his allegations.  Eventually, a Security Division

investigation was done and Mr. Williams' claims are deemed to be unfounded. The plaintiff

filed no grievances against the defendants.

The defendants are Warden Lantz, Correctional Officers Trainor, Martin, York, Onorfrio,

Nurses Wilcox and Arsenault, and Mental Health Worker Cutler.

## II.    LEGAL STANDARD

In a motion for summary judgment, the burden is on the moving party to establish that

there are no genuine issues of material fact in dispute and that it is entitled to judgment as a

matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). A court must

grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

material fact . . .'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A

dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'"  Aldridge v. Randolf Cent. Sch. Dist., 963 F.2d 520,

523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248). After discovery, if the nonmoving party

"has failed to make a sufficient showing on an essential element of [its] case with respect to

which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).

To defeat a motion for summary judgment that is supported by documentary evidence

and sworn affidavits, a plaintiff "must do more than simply show that there is some metaphysical

doubt as to the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S.

574, 586 (1986). He "must come forward with enough evidence to support a jury verdict in [his] favor, and the motion will not be defeated merely . . . on the basis of conjecture or surmise." Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992 (citation and internal quotation marks omitted). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

When one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

## II.    ARGUMENT

### A.    The Plaintiff Did Not Exhaust His Administrative Remedies Pursuant To Administrative Directive 9.6 Of The Connecticut Department Of Correction

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action

3

in federal court, see Porter v. Nussle, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process.  See Booth v. Churner, 532 U.S. 731, 741 (2001).  This requirement of complete exhaustion of administrative remedies must be satisfied before a federal action is commenced.  See Neal v. Goord, 267 F.2d 116, 122 (2d Cir. 2001) (holding that an inmate may not avoid the requirements of 42 U.S.C. § 1997e(a) by exhausting administrative remedies after filing a civil rights action in federal court).

This court has taken judicial notice of the administrative remedies for the State of Connecticut, Department of Correction which are set forth in Administrative Directive 9.6, entitled Inmate Grievances.[1]  Section 6(A) provides that the following matters are grievable:

1. The interpretation and application of policies, rules and procedures of the unit, division and Department.

2. The existence or substance of policies, rules and procedures of the unit, division and Department . . . .

3. Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.

4. Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.

5. Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein.

---

[1]    See, e.g., King v. Myers, et al., Civil No. 3:01CV886(AWT)(DFM), Ruling, 3/13/03.

6.       Property loss or damage.

Connecticut Department of Correction Administrative Directive 9.6(6)(A).

The plaintiff's amended complaint includes several claims.  He claims defendant Trainor

verbally and physically abused him as well as informed other inmates of the criminal charges

pending against him.  He claims Warden Lantz should have known of the past conduct of her

correctional officers.  He claims defendant Martin was a "lookout" and threw sneakers at him.

He claims he informed medical and mental health staff, defendants Wilcox, Cutler and

Arsenault, what had happened to him.  The plaintiff did not file any grievances against any of the

defendants.

In his Amended Complaint, the plaintiff alleges he had exhausted available

administrative remedies by:

> "There were initial inquiry report allso [sic] investigation report
> investigation was done Trooper J. Patterson Troop E Montville Security
> Division investigation that was done by the Commissioner of Correction
> the Department of Correction and A investigation was done by Matthew
> Davis Public Defender of the State of Connecticut."

The plaintiff does not allege, however, that he filed any Level 1 grievances against any of

the defendants pursuant to the grievance procedure contained in Administrative Directive 9.6.

He did not file a Level 2 or Level 3 appeal which would have been available to him if he had

obtained an adverse ruling on a Level 1 grievance or Level 2 appeal.  The plaintiff did complain

to his public defender, who wrote to the Commissioner of Correction and the Commissioner had

a Security Division investigation conducted.  The investigation did not substantiate the plaintiff's

claim.  Since this was not a grievance, the plaintiff had no appeal rights from the result of the

5

investigation.  It was not a complaint made in accordance with the grievance procedure.  Based

on a referral from mental health staff, a statement was taken from the plaintiff and an incident

report was written at Garner Correctional Institution after the plaintiff's transfer to that facility.

This statement concerned allegations made by the plaintiff as to what allegedly had occurred at

Corrigan Correctional Institution.  This, however, was not a grievance nor a complaint filed in

accordance with the grievance procedure.  Among other things, no "appeal" of an incident report

is available.  The same is true of whatever investigation the State Police did or did not do.  In

short, the plaintiff apparently complained to a number of people, but he did not avail himself of

the administrative remedies available to him pursuant to the Grievance Procedures.  He was

required to do so prior to bringing this civil action.

Recent decisions of the Second Circuit have held that this Court should engage in a three

part inquiry.[2]  First, were administrative remedies available to the plaintiff?  In this case, Section

9.6 of the Administrative Directives clearly provided an available administrative remedy.

Second, have any of the defendants waived this special defense?  In this case, they have claimed

it as an affirmative defense in their answer to plaintiff's Amended Complaint.  Third, are

defendants actions such as to constitute estoppel?  In this case, no defendant has prevented the

plaintiff from pursuing his administrative remedies.

---

[2]   See, Abrey v. McGinnes, 380 F.3d 663 (2d Cir. 2004); Johnson v. Testman, ___ F.3d ___, 2004 U.S. App. LEXIS 17236, 2004 L 1842669 (2d Cir. Aug. 18, 2004); Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (per curriam); Giano v. Goord, 380 F.3d 670 (2d Cir. 2004).

The Second Circuit has held an inmate need not exhaust in "special circumstances" that justify an inmates failure to comply with administrative remedies.  In this case, no such "special circumstances" exist.  The plaintiff simply decided to complain to various persons rather than file a grievance.

Plaintiff's claims against all of the defendants should be dismissed for failure to file a grievance against each of them as an available administrative remedy.

## III.    PERSONAL INVOLVEMENT

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws." Rizzo v. Goode 423 U.S. 362, 370-71 (1976), quoting 42 U.S.C. § 1983.  Where damages are sought in a § 1983 action, the defendant(s) must be responsible for the alleged constitutional deprivation.  Thus, an allegation of personal involvement is a necessary prerequisite for a valid cause of action under § 1983.  See, e.g., Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir.), Cert. denied, 414 U.S. 1033 (1973), rev'd on other grounds, Graham v. Connor, 490 U.S. 386 (1989); McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978).  Consistent with the requirement that personal involvement is required for a claim under § 1983, the Supreme Court has ruled that the general doctrine of respondeat superior does not suffice to state a claim under § 1983.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 692-95 (1978).  Thus, in order to state a cognizable claim, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to

support their liability for wrongful acts," not merely their "linkage in the chain of command." Ayer v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).

Supervisory responsibility alone is not enough to confer exposure to liability. Williams v. Smith, 781 F.2d 313, 323 (2d Cir. 1986); Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974). A supervisory official may only be liable if it is alleged that he or she learned of the violation and failed to remedy the wrong, if he created or permitted the policy or wisdom under which the unconstitutional practices occurred, or if he was grossly negligent in managing subordinates who caused the violation. Williams v. Smith, 781 F.2d at 323-24; Meriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989). "A plaintiff must thus allege a tangible connection between the acts of the defendants and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). An official cannot be held liable merely because he or she occupies a high position in the prison hierarchy. Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).

Commissioner Lantz, who at the time relevant to plaintiff's amended complaint, was the Warden at Corrigan-Radgowski Correctional Institution. The plaintiff speculates that "I am sure that the Warden Theresa Lantz new [sic] of the nature of this correctional officer because appelee [sic] this has happen in this past." Plaintiff's Amended Complaint, filed February 21, 2003, Section D. Cause of Action, Claim II. While the plaintiff does not identify the correctional officer to whom he is referring, it is assumed the plaintiff is talking about Correctional Officer Mark Trainor. The plaintiff's assumptions are not correct. Correctional Officer Trainor has never received discipline, has never been accused of excessive or inappropriate conduct, has never been sued for his performance as a correctional officer. The same can be said of the other

officers alleged to have violated the plaintiff's rights. Correctional Officer York and Correctional Officer Martin have no record of inappropriate conduct. There is no basis for imposing liability on Theresa Lantz because she was not personally involved in any alleged deprivation of plaintiff's rights.

Defendant, Correctional Officer Onofrio, was allegedly the "Booking Officer on May 19, 2000." However, the plaintiff alleges that "I don't recall seeing him at the time this was going on" (Amended Complaint, Section D. Cause of Action, Correctional Officer Paul Onofrio) and Onofrio "wasn't aware of what took place at the time" (See Amended Complaint, Section A. Parties, #8 Paul Onofrio). The Security Division Investigation found Onofrio did not work until after the alleged incident. Thus, the complaint fails to allege any personal involvement of defendant Onofrio in the alleged violation of plaintiff's rights.

Lieutenant York is named, but there are no allegations made against him. It is clear he is being sued on a respondeat superior theory which can not be maintained under § 1983.

The plaintiff claims that, after the alleged incident with defendant Trainor, he informed defendants Nurse Wilcox, Mental Health Worker Cutler, and Nurse Arsenault what had happened to him with Correctional Officer Trainor. He also alleges that defendant Wilcox heard the verbal harassment of other inmates. Nurse Wilcox has no responsibility to control the actions of other inmates. As to what the plaintiff told her and the other medical/mental health staff, these defendants are not responsible for investigating or supervising or controlling the behavior and conduct of defendant Correctional Officer Trainor or other correctional staff. They were not present nor did they witness what allegedly occurred between the plaintiff and defendant Trainor

or other correctional staff.  They have no constitutional duty to report every allegation made by

an inmate to custodial staff.  The Department of Correction has provided a grievance procedure

for inmates to report such conduct.  A custody supervisor such as a correctional lieutenant or

captain could also be informed if the plaintiff wanted to simply report an incident.  Medical staff

and mental health staff are not in the custodial chain of command and are not responsible for the

conduct of custodial officers.  Defendants Cutler, Wilcox, and Arsenault were not involved in

any alleged violation of plaintiff's rights.

IV.     **DEFENDANT ARSENAULT HAS NOT BEEN SERVED IN HER INDIVIDUAL CAPACITY**

The plaintiff has not served his complaint against defendant Arsenault in her individual

capacity (see, Waiver of Service, dated June 10, 2004 as to other defendants but not as to

Arsenault).  The plaintiff's actions against defendant Arsenault in her individual capacity should

be dismissed for failure of service of process.

## CONCLUSION

The plaintiff's failure to exhaust his administrative remedies should result in the Court's

granting of the defendants' Motion for Summary Judgment.  In the alternative, the lack of

alleged personal involvement in any wrongdoing by defendants Lantz, Onofrio, York, Cutler,

Arsenault and Wilcox, should result in summary judgment.

DEFENDANTS
John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:_____/s/_____
    Michael J. Lanoue
    Assistant Attorney General
    110 Sherman Street
    Hartford, CT  06105
    Telephone No.: (860) 808-5450
    Federal Bar No. ct05195
    E-mail:  michael.lanoue@po.state.ct.us


## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 29th day

of December, 2004:

    Leroy R. Williams, Jr.
    P.O. Box 794
    Acton, ME  04001


                _____/s/_____
                Michael J. Lanoue
                Assistant Attorney General