UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 MAY -2 A 9: 40

```
LeROY R. WILLIAMS, JR.,        :
                               :
     Plaintiff,                :
                               :
                               :           PRISONER
     v.                        :    Case No. 3:01CV735(DFM)
                               :
JOHN ARMSTRONG, ET AL.,[1]     :
                               :
     Defendants.               :
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, LeRoy R. Williams, Jr. ("Williams"), commenced this civil rights action pro se pursuant to 28 U.S.C. § 1915, while he was confined in the custody of the Connecticut Department of Correction. He since has been released from custody. Williams alleges that he was assaulted and sexually harassed when he was admitted to Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut. Pending before the court is the defendants' motion for summary judgment.[2] (Doc. #50.) For the reasons that follow, the defendants' motion is denied in part and granted in part.

---

[1] The named defendants are John J. Armstrong, Jack Tokarz, Theresa Lantz, Robert York, Mark Trainor, Robert Martin, Cathy Wilcox, Arsenault, Mary Cutler and Paul Onofrio. On December 3, 2002, the court granted defendants' motion to dismiss all claims against defendants Armstrong and Tokarz.

[2] The parties consented to proceed before a United States Magistrate Judge (doc. #42) on September 29, 2004, and the case was transferred to the undersigned for all purposed including the entry of judgment.

I.   Standard of Review

The party moving for summary judgment bears the burden of establishing that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); SCS Communications, Inc. v. Herrick Co., Inc., 360 F.3d 329, 338 (2d Cir. 2004). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. School Dist., 963 F.2d 520, 523 (2d Cir. 1992). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. The moving party may satisfy its burden "by showing -- that is pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted). Summary judgment is appropriate if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If, "'as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83

(2d Cir. 2004) (quoting <u>Gummo v. Village of Depew</u>, 75 F.3d 98, 107 (2d Cir. 1996)). However, the "non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. <u>Securities & Exchange Comm'n v. Research Automation Corp.</u>, 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995). A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment. <u>See</u> <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990).

II. <u>Facts</u>[3]

---

[3] The facts are taken from defendants' Local Rule 56(a)1 Statement (doc. #50-3). Defendants filed their motion for summary judgment on December 30, 2004. On January 10, 2005 and again on February 4, 2005, the court provided Williams with specific notice of his obligation to respond to the motion and of the contents of a proper response. Williams filed two documents entitled Motion for Summary Judgment in response to defendants' motion. He has not attached a Local Rule 56(a)1 or Local Rule 56(a)2 Statement to either document. Because Williams has not submitted a Local Rule 56(a)2 Statement, the defendants' facts are deemed admitted. <u>See</u> D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance

Williams was admitted to Corrigan-Radgowski Correctional Institution on May 19, 2000. At the time of his arrival, defendant Martin was the Admitting and Processing Property Officer and defendant Trainor was the Admitting and Processing Shakedown Officer. Neither defendant has been disciplined for improper conduct in their treatment of inmates.

Williams alleges that defendant Trainor sexually harassed and threatened him because of his criminal charges, slapped him several time in the shower and slammed him against the wall. He also alleges that defendant Martin observed this conduct but did not intercede. Williams alleges that he reported this conduct to defendants Wilcox, Cutler and Arsenault and that they placed him in the medical unit for his safety.

Williams was transferred to Garner Correctional Institution on May 22, 2000. The Department of Correction conducted two investigations into Williams' allegations. The first was initiated on May 31, 2000, when Williams reported the incident to a correctional official at Garner Correctional Institution. The second was ordered when defendant Armstrong received a letter, dated July 25, 2000, from Williams' public defender. Both investigations resulted in findings that the allegations were unfounded.

---

with Rule 56(a)2.")

III. Discussion

The defendants argue that they are entitled to summary judgment because: (1) Williams failed to exhaust his administrative remedies before commencing this action, (2) Williams fails to allege the personal involvement of defendants Lantz, Onofrio and York and (3) defendant Arsenault has not been served with a copy of the complaint in this case.

A. Exhaustion of Administrative Remedies

The court first considers the defendants' exhaustion argument. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions." This provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see Porter v. Nussle, 534 U.S. 516, 532 (2002), regardless of whether the inmate can obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion of administrative remedies is an affirmative defense. Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004). Accordingly, the defendants bear the burden of demonstrating that Williams failed to exhaust his administrative remedies.

In reviewing a claim of failure to exhaust administrative remedies, the court considers four questions: (1) were administrative remedies available to the inmate; (2) did defendants

forfeit their affirmative defense of failure to exhaust administrative remedies by failing to raise or preserve that claim; (3) whether any defendant is estopped from raising this claim because, by his actions, he inhibited the inmate's attempts to exhaust his administrative remedies; and (4) if administrative remedies were available to the inmate and defendants neither forfeited their defense nor inhibited the inmate from exhausting his remedies, whether special circumstances have been alleged that would justify the inmate's failure to comply with the exhaustion requirement. See Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Grievances. During the relevant time period, section 6(A) provided that the following matters were grievable:

1. The interpretation and application of policies, rules and procedures of the unit, division and Department.
2. The existence or substance of policies, rules and procedure of the unit, division and Department . . . .
3. Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.
4. Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.
5. Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein.
6. Property loss or damage.

Williams' assault and sexual harassment claims are included within the list of grievable matters at items 3 and 5. In addition, the grievance procedures provide that if a timely response to a level 1 grievance is not received, the inmate may file a level 2 grievance. (See Administrative Directive 9.6, §16, Defs.' Mem. Ex. B.) Thus, both levels of the grievance process were available to Williams.

As to the second issue, whether the defendants raised or preserved their claim, the defendants asserted the affirmative defense of failure to exhaust administrative remedies in their motion to dismiss, their answer and their motion for summary judgment. Therefore, the defendants have not forfeited their right to assert this defense.

The third question the court must consider is whether, by their actions, the defendants inhibited Williams from filing grievances and exhausting his administrative remedies. The Second Circuit has held that defendants' threats or intimidating conduct can estop them from asserting the affirmative defense of failure to exhaust administrative remedies. See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004). In that case, the prisoner alleged that he was threatened, beaten, denied grievance forms and writing implements and transferred to another correctional facility. Id. at 162.

In an interview given to correctional staff as part of the

Department of Correction's investigation into this incident, Williams stated that he was afraid to report the incident while he was at Corrigan Correctional Institution. Williams was transferred to Garner Correctional Institution on May 22, 2000. He did not file a grievance upon his arrival. Instead, on May 31, 2000, Williams reported the incident to a correctional captain at Garner. The captain completed an incident report and correctional officials commenced an investigation. In addition, in July 2000, Williams' allegations were relayed to his public defender who then wrote a letter to defendant Armstrong requesting an investigation. Williams' allegations were investigated a second time by the Department of Correction Security Division. Williams states that, as part of one of the investigations, he completed grievance forms. Copies of the forms are not included in the materials provided by either party and defendants have not included any affidavits documenting a search for the forms.

Although Williams might have been afraid to file a grievance while he was at Corrigan Correctional Institution, he alleges that he completed the forms as part of one of the investigations. In opposition to defendants' motion, he provided copies of his requests inquiring where to send the completed forms. The dates on the form are inconsistent. The information currently before the court does not clearly establish whether Williams completed the appropriate grievance forms and, if so, when he completed them.

The defendants have not met their burden of demonstrating that they are entitled to judgment as a matter of law on this ground. Accordingly, the defendants' motion for summary judgment on the ground that Williams failed to exhaust his administrative remedies is denied.[4]

B. <u>Personal Involvement</u>

Defendants Lantz, Onofrio and York argue that they are entitled to summary judgment because the plaintiff fails to establish their personal involvement.

---

[4] If the court were to conclude that Williams did not submit the appropriate grievance forms, the court must consider whether there are any special circumstances that would justify Williams' failure to exhaust available administrative remedies. See <u>Johnson v. Testman</u>, 380 F.3d 691, 698 (2d Cir. 2004) (remanding case to enable district court to determine, <u>inter alia</u>, whether inmate was justified in raising complaint in appeal of disciplinary finding rather that by filing separate institutional grievance).
  The Department of Correction conducted two investigations into Williams' allegations. Williams states in opposition to defendants' motion that he considered the investigations, the statements he provided to several Department of Correction employees in connection with the investigations and the assurances that his claims would be investigated to be sufficient to satisfy the exhaustion requirement.
  The investigations put correctional officials on notice of Williams' claims of assault and sexual harassment. Thus, correctional officials were not deprived of the ability to take corrective action if any action were determined appropriate. The exhaustion requirement was adopted to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." see <u>Porter v. Nussle</u>, 534 U.S. 516, 524-25 (2002). Arguably, that purpose was achieved by the initiation of two investigations. Because the court has determined that defendants have not provided evidence to support their assertion that Williams did not file administrative grievances, however, the court need not resolve this question.

9

1. Defendant Lantz

In May 2000, defendant Lantz was the Warden of Corrigan Correctional Institution. Williams alleges: "I am sure that the warden Theresa Lantz new of the nature of this correctional officer becuse appelee this has happen in the past." The court concludes that Williams is asserting a claim of supervisory liability against defendant Lantz.

"A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002). Section 1983 imposes liability only on the official causing the violation. The doctrine of respondeat superior is inapplicable in § 1983 cases. See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999); Prince v. Edwards, No. 99 Civ. 8650(DC), 2000 WL 633382, at *6 (S.D.N.Y. May 17, 2000) ("Liability may not be premised on the respondeat superior or vicarious liability doctrines, . . . nor may a defendant be liable merely by his connection to the events through links in the chain of command.")(internal quotations and citation omitted).

"The liability of a supervisor under § 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to

10

continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 125 S.Ct. 971 (Jan. 18, 2005). In addition, Williams must demonstrate "an affirmative causal link between the supervisor's inaction and [his] injury." Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).

Williams alleges that defendant Lantz should have known that defendant Trainor would assault and harass him because of previous incidents. The court assumes that Williams is basing his claim of supervisory liability on section (3), permitting a practice or custom to continue, or section (4), negligently supervising defendant Trainor.

The defendants have provided evidence that defendant Trainor has never been disciplined for his conduct toward an inmate. Williams has provided no contradictory evidence demonstrating that defendant Lantz should have known about and prevented defendant Trainor's alleged actions. Therefore, Williams has not met his burden of establishing a genuine issue of material fact regarding defendant Lantz' actions supervising the correctional staff at Corrigan Correctional Institution on May 19. 2000. Defendants' motion for summary judgment is granted as to the claims against defendant Lantz.

2. <u>Defendants Onofrio and York</u>

Defendants Onofrio and York are correctional officers listed on the work schedule as assigned to the Admitting and Processing Area on May 19, 2000. To state a claim for damages against them, therefore, Williams must demonstrate that each officer was personally involved in the incident that led to the denial of his constitutionally protected rights. See <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994).

Defendant Onofrio is listed on the work schedule as the Booking Officer. The alleged incident took place at 4:00 p.m. Defendants have provided evidence that defendant Onofrio did not report to work that day until 4:45 p.m. He therefore was not present in the Admitting and Processing Area when the alleged assault and harassment occurred. In addition, in his description of the parties, Williams states that he did not see defendant Onofrio during the incident and alleges that defendant Onofrio was not aware of the incident at the time it occurred. Similarly, Williams states that defendant York was not aware of the incident.

Williams has presented no evidence in opposition to defendants' motion for summary judgment demonstrating the involvement of defendants Onofrio and York. Because he fails to demonstrate a genuine issue of material fact regarding his claims against defendants Onofrio and York, the defendants' motion for summary judgment is granted as to the claims against them.

C.  <u>Claims Against Defendant Arsenault</u>

The defendants next argue that the court lacks personal jurisdiction over defendant Arsenault because she was not served with a copy of the complaint. The record reveals that mail service on defendant Arsenault was returned unexecuted on February 23, 2004. Thereafter, counsel waived service for all defendants except Arsenault. Counsel stated that defendant Arsenault no longer was employed by the Connecticut Department of Correction and he had no authority to waive service. <u>See</u> doc. #32. The court cannot order personal service on defendant Arsenault without a current address. Thus, the defendants' motion for summary judgment is granted as to the claims against defendant Arsenault.

In addition, Williams stated in the statements he gave to investigators that he spoke with two women, a nurse and a mental health worker. Williams alleges that he reported the incident to a nurse "Patricia." None of the defendants are named Patricia. The correctional officers investigating the incident interviewed defendant Arsenault. She stated that when she was called to interview and evaluate Williams on May 19, 2000, she was busy conducting a clinic and asked the officer to contact defendant Cutler to interview Williams. In their statements, both defendants Wilcox and Cutler state that they interviewed Williams on May 19, 2000. Because defendant Arsenault did not interview or examine Williams on the date of the incident, the court concludes that

Williams has failed to present any evidence to support a claim against defendant Arsenault. In view of this, the claims against defendant Arsenault also could be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) which requires the court to dismiss at any time allegations that fail to state a claim upon which relief may be granted.

IV. Conclusion

For these reasons, the defendants' motion for summary judgment (doc. #50) is denied in part and is granted in part. The motion is granted as to the claims against defendants Lantz, Onofrio, York and Arsenault. These defendants are no longer in the case. The case will proceed as to the claims against defendants Trainor, Martin, Cutler and Wilcox.

SO ORDERED this 29th day of April, 2005, at Hartford, Connecticut.

Donna F. Martinez
United States Magistrate Judge